IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

COLLIN ZACHARY LAFRENIERE,  )
                                             )
     Petitioner,                   )
                                             )
v.                                            )     Civil Action No. 3:25-cv-189-HEH
                                             )
CHADWICK DOTSON,          )
                                             )
     Respondent.                 )

**MEMORANDUM OPINION**
(Granting Respondent's Motion to Dismiss)

Collin Zachary LaFreniere ("Petitioner"), a Virginia inmate proceeding with counsel, filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 1) challenging his convictions in the Circuit Court for the City of Fredericksburg ("Circuit Court"). Petitioner contends that he is entitled to relief on the following ground:[1]

> The state habeas court's decision was wrong and . . . unreasonable under § 2254(d)(1) & (2) when it denied [Petitioner]'s claim that his rights to the effective assistance of counsel under the Sixth Amendment of the United States Constitution were violated when trial counsel failed to ensure that the hold order was provided to the jail and failed to ensure that [Petitioner] received a decision on his request for a reconsideration of his sentence within 60 days of being transferred to the Virginia Department of Corrections.

(ECF No. 1 at 13–14 (footnote omitted).) Respondent has moved to dismiss. (ECF No. 9.) Petitioner has replied. (Reply, ECF No. 11.) The Court will grant

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the spelling, capitalization, and the punctuation in the quotations from the parties' submissions and the state court record.

Respondent's Motion to Dismiss because Petitioner fails to demonstrate any deficiency of counsel prejudiced him.

## I. PROCEDURAL HISTORY

### A. Petitioner's Trial, Sentencing, and Direct Appeal

Following a bench trial, the Circuit Court convicted Petitioner of robbery, use of a firearm in the commission of robbery, conspiracy to commit robbery, abduction, and use of a firearm in the commission of abduction. (ECF No. 10-2, at 1.) Petitioner appealed his convictions to the Court of Appeals of Virginia. (*Id.*) On appeal, Petitioner asserted "that the evidence was insufficient to prove robbery and that, by extension, it was also insufficient to prove use of a firearm in the commission of a robbery. Further, he contest[ed] his firearm conviction on the basis that the evidence did not prove he handled the firearm." (*Id.*) In rejecting those arguments, the Court of Appeals of Virginia summarized the evidence of his guilt and stated its reasoning as follows:[2]

> . . . Appellant drove to Allen's house and waited in the car with Elborolosi while Allen entered the house. After approximately fifteen minutes, Allen returned to the car. With Elborolosi still in the back seat, appellant drove a short distance to a fast-food restaurant in Spotsylvania County. Elborolosi testified that, after he paid for the food, he expected the men to take him home. Instead, they drove Elborolosi to a "dark alley." Allen pointed a gun at him, and appellant threatened him with a knife. Both men demanded that Elborolosi surrender his money.
> Afraid for his life, Elborolosi complied and urged the men to return him to the Sheetz gas station. Instead, the men continued to threaten Elborolosi with their weapons and drove him to a Fredericksburg townhome

---

[2] Petitioner and his coconspirator, Curtis Allen, committed two different robberies of Ahmed Elborolosi. The first robbery occurred in Spotsylvania County and involved robbing Elborolosi of roughly $780 cash. The second robbery occurred in the City of Fredericksburg and involved Allen and Petitioner of robbing Elborolosi of his cell phone. The § 2254 Petition challenges the second robbery occurring in the City of Fredericksburg involving Elborolosi's phone.

2

subdivision, where they stopped in a dark parking lot. Elborolosi believed that the men intended to kill him. As appellant and Allen presented their weapons to Elborolosi, they demanded his cell phone and ordered him to exit the vehicle and cover his face with his jacket. Pleading for his life, Elborolosi turned over his phone and attempted to exit the car, but he discovered that the door was locked. When he finally exited the vehicle, appellant and Allen left with his phone and drove away.

. . . Appellant and Allen were apprehended in the Honda a short time later that night outside Allen's house. Appellant's Toyota was also outside Allen's home. Upon searching the Toyota, the police found two knives. A search of Allen's home produced a gun matching Elbrolosi's description of the firearm used in the robberies.

Appellant asserts that the evidence failed to prove that he committed "the relevant robbery" in Fredericksburg because Elborolosi testified that Allen, not appellant, produced a gun and demanded Elborolosi's phone. Further, he stresses that Elborolosi surrendered his phone to Allen and that no evidence established any communication between appellant and Allen about taking the phone. Thus, appellant maintains that the Commonwealth's evidence . . . failed to disprove the likely possibility that . . . [a]ppellant was involved in the robbery of Mr. Elborolosi's money in Spotsylvania but had no knowledge or participation in the robbery of Mr. Elborolosi in Fredericksburg." Assuming that the evidence failed to prove that he robbed Elborolosi, appellant asserts that it also failed to prove that he used a firearm in the commission of the robbery. As noted previously, he also emphasizes that no evidence established that he "held or brandished a gun." We disagree.

. . . Here, the evidence proved that both appellant and Allen threatened Elborolosi with weapons as they both ordered him to surrender his cell phone. *See Waters v. Commonwealth*, 29 Va. App. 133, 139 (1999) (affirming the defendant's robbery conviction when he used a knife to "threat[en]" the victims). Even if Allen alone demanded the cell phone, the evidence was sufficient to prove that appellant was guilty of the robbery as a principal in the second degree because he assisted Allen by presenting a weapon and driving the car. *See* Code § 18.2-18. Thus, the evidence was sufficient to prove beyond a reasonable doubt that appellant robbed Elborolosi of the cell phone.

Finding no error in appellant's robbery conviction, we also reject his challenge to the related firearm conviction on the basis that the evidence was insufficient to support the robbery conviction. Further, we reject his argument that his firearm conviction should be reversed because he never handled the gun. "In the case of every felony, every principal in the second degree and every accessory before the fact may be indicted, tried, convicted and punished in all respects as if a principal in the first degree . . . ." *Id.* "It

3

> is a well-settled rule that a defendant is guilty as principal in the second degree if he is guilty of some overt act done knowingly in furtherance of the commission of the crime, or if he shared in the criminal intent of the principal committing the crime." *McMorris v. Commonwealth*, 276 Va. 500, 505 (2008).
>
> . . . .
>
> . . . Even if a defendant lacks knowledge that his confederate possesses a firearm, he is criminally responsible for the use of that firearm in the commission of a robbery in which the defendant participates. *See Carter v. Commonwealth*, 232 Va. 122, 126–27 (1986).
>
> Here, the evidence established that appellant actively participated in both robberies and that Allen used a firearm in both robberies. Both appellant and Allen demanded that Elborolosi surrender his phone at gunpoint, and appellant assisted in the cell phone robbery by threatening Elborolosi with a knife and by driving the getaway vehicle. Accordingly, the evidence was competent, credible, and sufficient to prove beyond a reasonable doubt that appellant was guilty of the robbery in Fredericksburg and the use of a firearm in the commission of that robbery.

(*Id.* at 2–5 (citation modified).)

> Petitioner also contested that the evidence was sufficient

> to support his abduction conviction because Elborolosi requested that appellant transport him "to a location near where he was dropped off." Assuming that the evidence failed to prove he abducted Elborolosi, appellant asserts that it also failed to prove the related firearm offense. As with his robbery-related firearm conviction, appellant argues that he did not commit the abduction-related firearm offense because he "never handled a firearm."

(*Id.* at 5.) The Court of Appeals of Virginia rejected those challenges and stated:

> "A conviction under the abduction statute 'requires only a showing of physical detention of a person, with the intent to deprive him of his personal liberty, by force, intimidation, or deception,' without more." *Clanton v. Commonwealth*, 53 Va. App. 561, 567 (2009) (quoting *Walker v. Commonwealth*, 47 Va. App. 114, 120 (2005)). The physical detention of an individual to facilitate escape following a robbery is sufficient to prove abduction. *See Haskell v. Commonwealth*, 218 Va. 1033, 1043 (1978) (holding that "escape is not an element of the crime of attempted robbery") . . . . Here, after appellant and Allen robbed Elborolosi in Spotsylvania, they did not drive him back to the Sheetz gas station or to his home as Elborolosi had requested. Instead, holding him at knifepoint and gunpoint in a locked

4

> vehicle, they drove him to a dark parking lot, took his cell phone, and forced him to cover his face as they drove away. From these actions, a rational fact finder could conclude that appellant and Allen transported Elborolosi from the original robbery site to the second robbery site with the intent to deprive him of his personal liberty and to facilitate their escape without detection. Accordingly, the evidence was sufficient to prove beyond a reasonable doubt that appellant abducted Elborolosi.
>       Because we conclude that the evidence supported appellant's abduction conviction, we also find that it was sufficient to prove that appellant used a firearm in the commission of that abduction. . . . [E]ven though appellant never handled the firearm, he acted in concert with Allen, who used a firearm to detain Elborolosi. Thus, the evidence was competent, credible, and sufficient to prove beyond a reasonable doubt that appellant was guilty as a principal in the second degree for the use of a firearm in the commission of the abduction. *See Carter*, 232 Va. at 126-27; Code § 18.2-18.

(*Id.* at 5–6.)

Lastly, Petitioner asserted the evidence was insufficient to support his conviction for conspiracy to commit robbery. (*Id.* at 6.) In making that argument, Petitioner stressed "that 'there was no evidence of any communication between [Allen] . . . and [him] after the . . . [first] robbery in Spotsylvania.' Appellant emphasizes that the evidence failed to prove that he 'was aware of or complicit in [Allen]'s plan to take the phone in Fredericksburg.'" (*Id.* at 6 (alterations in original).) In rejecting that claim, the Court of Appeals of Virginia noted, in pertinent part:

> [A]ppellant . . . does not challenge the trial court's factual finding that the men conspired to rob [the victim] in Spotsylvania. The trial court found that, although the initial conspiracy to rob Elborolosi occurred in Spotsylvania, an overt act in furtherance of that conspiracy occurred in Fredericksburg when appellant and Allen left Elborolosi in a parking lot and robbed him of his phone. We agree with the trial court's ruling.
>     . . . .
>       Here, the evidence supports the trial court's finding that appellant and Allen agreed to rob Elborolosi . . . and appellant does not contest that finding on appeal. The evidence demonstrates that, immediately before the

5

> Spotsylvania robbery, appellant unexpectedly drove Allen to his house, permitting rational inferences that Allen was retrieving a weapon and that a plan to rob Elborolosi had already been formed. After appellant left Allen's house, he took Elborolosi to a dark alley, additional evidence that appellant and Allen had already agreed to rob Elborolosi. Without discussion, appellant and Allen immediately presented weapons to Elborolosi and demanded his money. They continued to work in concert by displaying the weapons throughout the rest of the journey to Fredericksburg and jointly participated in the robbery of Elborolosi's cell phone, allowing them to escape without Elborolosi immediately notifying the police. Based on these circumstances, the trial court could reasonably conclude that appellant and Allen acted in accord when they robbed Elborolosi of his cell phone and that they committed the cell phone robbery in furtherance of the Spotsylvania robbery. Accordingly, the evidence was competent, credible, and sufficient to prove beyond a reasonable doubt that appellant was guilty of conspiracy to commit robbery.

(*Id.* at 7, 8 (footnotes omitted).)

The Circuit Court sentenced Petitioner as follows: robbery, ten (10) years with eight (8) years suspended; conspiracy to commit robbery, two (2) years with two (2) years suspended; use of a firearm in the commission of a robbery, five (5) years with no time suspended; abduction, two (2) years with two (2) years suspended; and, use of firearm in commission of abduction, three (3) years with no time suspended, all such sentences to run consecutive to any other sentence, for a total active sentence of ten (10) years. (ECF No. 10-1, at 1–2.) Thereafter, Petitioner unsuccessfully appealed to the Court of Appeals of Virginia and the Supreme Court of Virginia.

### B.     The Relevant Criminal Proceedings of Curtis Allen

The Commonwealth tried Petitioner's codefendant, Curtis Allen, before a jury in April of 2021. (ECF No. 1 ¶ 26.) That trial ended in a hung jury. (*Id.*) Thereafter, Allen, through counsel, negotiated a plea agreement. (*Id.* ¶ 33.) A Commonwealth

6

Attorney other than that who had tried Petitioner negotiated Allen's plea. (*Id.* ¶ 35.) Allen agreed to plead guilty to robbery, use of a firearm, and conspiracy to abduct to extort money, and in exchange, the prosecution would recommend that Allen serve a sentence of four (4) years and four (4) months. (*Id.* ¶¶ 33, 35.) Allen's counsel also secured from the prosecutor a promise to join in a motion to reduce Petitioner's sentence. (*Id.* ¶ 35.)

On August 16, 2021, while Petitioner was still in the local jail, Petitioner's counsel filed a motion in the Circuit Court "to continue to hold Petitioner at the Rappahannock Regional Jail because the prosecution had agreed that a sentence modification was appropriate in Petitioner's case in light of the inconsistent testimony of Elborolosi at the Curtis Allen trial." (*Id.* ¶ 28.)[3] On August 23, 2021, the Circuit Court granted Petitioner's motion. (*Id.* ¶ 30.) "On September 19 or 20, 2021, Petitioner met with trial counsel . . . [and] explained . . . that despite the request for a 'hold' in the jail, [he] was on a list and told he would be transferred to the Virginia Department of Corrections

---

[3] The relevant statute provides, in pertinent part:

> If a person has been sentenced for a felony to the Department of Corrections (the Department), the court that heard the case, if it appears compatible with the public interest and there are circumstances in mitigation of the offense, may, at any time before the person is transferred to the Department, or within 60 days of such transfer, suspend or otherwise modify the unserved portion of such a sentence. The court may place the person on probation in accordance with the provisions of this section.

Va. Code Ann. § 19.2-303 (West 2025).

7

imminently." (*Id.* ¶ 31.) On September 21, 2021, Petitioner was transferred to the Virginia Department of Corrections. (*Id.* ¶ 32.)

On January 19, 2022, Allen pled guilty to the crimes described above.[4] (*Id.* ¶ 33.) On January 25, 2022, Allen was sentenced as follows: twenty (20) years with sixteen (16) years suspended on the robbery; one (1) year with eight (8) months suspended on the use of the firearm in the commission of the robbery; and ten (10) years with ten (10) years suspended on the charge of conspiracy to abduct to extort money, for an active sentence of four (4) years and four (4) months. (*Id.* ¶ 37.) A judge other than the one who handled Petitioner's case performed the sentencing. (*Compare id.* ¶ 37 *with* ECF No. 10-1, at 4.)

### C. State Habeas Proceedings

Afterward, Petitioner, with counsel, filed a petition for a writ of habeas corpus with the Circuit Court, asserting his current claim for federal habeas relief. (ECF No. 10–9, at 1.) In rejecting that claim, the Circuit Court stated as follows:

> The petition focuses on post-trial proceedings, after the petitioner had been sentenced. His cases were on appeal, and he was represented by [the attorney] who also represented him at trial. There is no allegation of ineffective counsel at the trial, sentencing[,] or appellate stage.
> The petitioner was tried on October 5, 2020, and sentenced on January 26, 2021. He was held continuously through these proceedings at the Rappahannock Regional Jail. In April[] 2021 a co-defendant was tried for the same offenses. After a mistrial for a hung jury, counsel for the co-defendant apparently began negotiating a plea agreement for his client to

---

[4] Petitioner asserts that, although Allen did not plead guilty until January of 2022, Allen's counsel had secured the promise from the prosecutor to move for a reduction in Petitioner's sentence in August or September of 2021, when Petitioner was still detained in the local jail, and the Circuit Court still retained jurisdiction to modify Petitioner's sentence up to sixty days after he was moved from the local jail. (ECF No. 1 ¶ 35.)

8

avoid a second trial. Four months later, as negotiations apparently continued, counsel for the petitioner filed a motion to continue to hold the petitioner locally[,] given the ongoing negotiations between the prosecutor and the co-defendant's attorney. The Commonwealth joined in the motion. There is no evidence or allegation that [petitioner's counsel] was involved in these ongoing decisions.

On August 23, 2021, the trial court entered an agreed order, submitted by counsel, to grant the request to hold him in the local jail. This order was provided to counsel. On September 21, 2021[,] however, the petitioner was transferred to the Department of Corrections. There is no evidence concerning the dissemination of the Court's order for petitioner to remain housed locally, only that it wasn't honored.

On January 19, 2022, the co-defendant entered into a plea agreement for conviction and sentence recommendation. His sentence was substantially less than the sentence received by the petitioner. On that same day, approximately a year from his original sentencing, the Commonwealth Attorney attempted to discuss the petitioner's situation with [his counsel] by email.

. . . .

### Issues

. . . .

The standard for establishing a claim for ineffective assistance of counsel is clearly stated in *Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must show both deficient performance by counsel and prejudice to the defendant. The first prong, that counsel did not exercise the skill and care that a reasonably competent attorney would exercise[,] fails in this case. [Because his counsel represented him] at trial and sentencing[,] [petitioner] claims his counsel's failure to prevent his transfer to the Department of Corrections[] or to file a motion to reconsider sentence based on a co-defendant's mistrial constitute[s] ineffective assistance of counsel. There is nothing that petitioner's counsel could do, short of requesting a hold order from the Circuit Court to prevent his move to the Department of Corrections. From [the] sentencing on January 26, 2021[,] the authority to move the petitioner from a local facility to the Department of Corrections rests with the Director of the Department of Corrections, not with the Circuit Court or the local jail. [Va. Code §§ 53.1-120–21.] The Court Order to hold him locally was entered at the request of counsel, but the authority no longer resided in the Circuit Court. And his decision not to file a motion to reconsider within the statutory period after transfer[] was sound[,] given that he would have had no foundational basis other than the co-defendant's mistrial because the co-defendant didn't conclude his negotiations and enter a plea until January 19, 2022. In the sixty days the petitioner had to file a motion for reconsideration with the Circuit Court[,] there was no agreement

9

> or sentencing of the co-defendant to compare. Filing a motion to reconsider sentence because co-defendant's case was still pending after a hung jury is not a basis any reasonable attorney would rely upon. None of these actions constitute[s] a failure on the part of counsel, given the strong presumption of effective assistance.
>
> . . . .
>
> Even if the trial court . . . agreed to hear such a motion, there is . . . no way for the petitioner to show the motion would have been granted. . . . The trial court heard the evidence in petitioner's case, assessed the credibility of the witnesses[,] and imposed a sentence based on mandatory minimum sentences for the convictions (totaling eight years) as well as sentencing guidelines and other relevant factors. The petitioner cannot show he was prejudiced by the actions of counsel when it is pure speculation as to whether post-trial motions . . . would have resulted in any reduction . . . .

(ECF No. 10-9, at 1–5.) Petitioner appealed that decision to the Supreme Court of Virginia, which refused his Petition for Appeal. (Reply, at 1.)

## II.     APPLICABLE CONSTRAINTS UPON FEDERAL HABEAS REVIEW

To obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 further circumscribes this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)). Given the foregoing restrictions, the Circuit Court's findings figure prominently in this Court's opinion.

### III. ANALYSIS

To demonstrate ineffective assistance of counsel, a convicted defendant must first show that counsel's representation was deficient, and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, a convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, the Court need not determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

11

Those are the circumstances present here. Assessing the deficiency prong is complicated, while resolving the prejudice prong is straightforward.

The Supreme Court has stressed:

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome . . . . Instead, *Strickland* asks whether it is reasonably likely the result would have been different. . . . This does not require a showing that counsel's actions more likely than not altered the outcome, but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. . . . The likelihood of a different result must be substantial, not just conceivable.

*Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (citation modified).

Here, the Circuit Court had the opportunity to view and weigh the evidence against Petitioner. The Circuit Court concluded that the evidence proved beyond a reasonable doubt that Petitioner committed robbery, conspiracy to commit robbery, use of a firearm in the commission of a robbery, abduction, and use of a firearm in the commission of abduction. These crimes were more numerous and serious than the crimes to which Allen pled guilty. Further, as noted by the Circuit Court, Petitioner's two firearm convictions required a mandatory minimum sentence of eight (8) years, and the remaining two years were appropriate in light of the "sentencing guidelines and other relevant factors." (ECF No. 10-9, at 5.)

Given these circumstances, Petitioner fails to demonstrate prejudice. Further, the Court discerns no unreasonable application of the law and no unreasonable determination of the facts in the Circuit Court's rejection of Petitioner's claim. See 28 U.S.C. § 2254 (d)(1)–(2).

## IV. CONCLUSION

Petitioner's claim will be dismissed. The Motion to Dismiss (ECF No. 9) will be granted. The § 2254 Petition will be denied. The action will be dismissed. A certificate of appealability will be denied.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: Dec. 1, 2025
Richmond, Virginia